GRISWOLD *against* THE TERTENANTS OF WALTON.

ON appeal from a taxation, under the statute,(a) of the Sheriff's fees in this cause, for serving the writ of *scire faci-as*, the Court *allowed* to the Sheriff the following charges :

Serving writ on 32 defendants,                      $16,00
Travel fee on 32 defendants, 5 miles each,
   all the defendants residing in one village,
   5 miles from the court house,                  ¯9,60

(a) *Sess.* 41, *ch.* 259, *s.* 12.

*Fees for serving scire fa cias on several defendants : 50 cents for serving writ on each defendant, beside mileage allowed for each ; also, return, 12 1-2 cents, and 2 summoners for each tenant, at 50 cents each summoner. Summons in writing, disallowed.*

ration, assuming under such circumstances any mischief is likely to arise. It appears to me, however, to be matter that will not avoid the verdict."

*Best*, J. said, " I am alarmed at the extent to which the proposition contended for may be carried, if it is well founded ; for if this is a mis-trial, in consequence of a separation of the jury, I cannot discover any distinction between a separation for a minute, and a separation for a considerable period of time ; for, if the argument is right, it is right to this extent, that if by any accident a jury gets out of the box for a single minute, it is a mis-trial. Let us see the extent of mischief to which this doctrine may be carried. Suppose, in the case of a trial for capital felony, some of the jury by accident get out of the box, and the prisoner, in the result of the trial, is acquitted, the consequence of this argument would be a mis-trial, and the man must be put on his trial again. That is a consequence which alarms me, and I do not feel that we ought to give any countenance to an objection which would go to such a mischievous extent. Several cases have been cited, and it appears that the only one which touches this question is that of Lord *Delamere*, in the 4th *State trials*, where the Judges appeared to have said, that the jury once charged cannot be discharged. That that might be law at one time, I have no doubt ; but the practice for a long period of time will shew what the law is ; and I believe there is no Judge who has sat for any length of time in this Hall, that has not known and approved of discharges of juries. The constant and uniform practice which has existed for a considerable length of time, will shew that what is stated in Lord *Delamere's* case is not now to govern our decision." In another place, he remarked ; "The Judge is vested with a discretion on the subject, which he will exercise on his own motion, in keeping the jury together, or if either of the parties desired it, no Judge would refuse such an application. If it were stated by the parties, that there is cause to apprehend that some improper practices might take place if the jury were separated—that by mix-

| Returning the writ, | $00,12½. |
| Summoners fees—2 Summoners for each | |
| tenant, 50 cents each, | 32,00 |
| Taxing costs and attendance, | 75 |

But *struck out* the following charge as improper :

| Summons in writing, prepared and left with | |
| each tenant, 50 cents each, | $16,00 |

*Birdseye,* for the Sheriff.

*Lynch,* contra.

ing with the multitude they might imbibe their feelings, or that they might be influenced in their verdict by any communication with the crowd, there- is no Judge who would not prevent that from taking place, by keeping the jury apart from the multitude, till they gave their verdict. But if any such application were made by either of the parties, I do not see how it could be complied with in such a case as this, unless the party applying un- dertakes to defray the expense attendant upon keeping them together : for, in the case of a misdemeanour, I do not understand where the expense is to come from ; for I do not agree in the propriety of keeping the jury shut up for a number of days at their own expense. It appears to me, howev- er, that no mischief can result from allowing juries to separate ; a discretion being always vested in the Judge, as to the propriety or impropriety of keeping them together, in each particular case."

The AMERICAN CASES, on this subject, present nearly the same view of the question as the *English,* with the exception of *Connecticut.* In that state, though formerly held otherwise, and now *apparently* forbidden by a statute, the jury exercise the right of separating and assembling according to convenience, like our grand jurors in this state, even after they have re- tired from the bar, under charge of the officer. In *Brandin* v. *Grannis,* *et ux.* (1 *Con. Rep.* N. S. *n.* (*a*) in Error, *Nov.* 1811, this practice was sanc- tioned by a judicial decision, of their highest tribunal. Yet shortly before this, (1808,) the late *Livingston,* J. (*C. C. U. S. Lester* v. *Stanley,* 3 *Day's Rep.* 237.) did not consider that practice warrantable under the statute, which he said appeared to have been made in affirmance of the common law ; and he told the jury, if they separated before they had agreed, he should set their verdict aside. The ancient practice, in that state, was in accordance with Judge *Livingston's* decision, as appears by an adjudged case in 1811 (*Nichols* v. *Whiting,* 3 *Day's Rep.* 287, *n.* a.) And in *Bran- din* v. *Grannis, Baldwin, J.* who delivers the opinion of the Court, seems to admit, that a literal interpretation of the statute would forbid a separa- tion. He reposes himself upon a practical construction to the contrary, for a great number of years, which he holds consonant to the spirit of the stat- ute, and vindicates the correctness of the practice by another provision, requiring from the petit jury an oath of secresy, like that which our grand